UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHNNY R. ANDOE,<br><br>      Petitioner,<br><br>vs.<br><br>RANDY BLADES and HENRY ATENCIO,<br><br>      Respondents. | Case No. 1:13-cv-00526-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

On October 17, 2016, the Court entered an Order re-opening this stayed habeas corpus matter. (Dkt. 165.) Petitioner is proceeding on his Amended Petition. (Dkt. 131.) All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 46.)

Pending before the Court are Respondent's Motion for Summary Dismissal (Dkt. 177), Petitioner's two Motions to Dismiss Respondent's Motion for Summary Dismissal (Dkt. 179, 188), and several other motions filed by the parties. Having considered the parties' arguments and having reviewed the record, including the state court record, the Court concludes that oral argument is unnecessary and enters the following Order dismissing the Petition for Writ of Habeas Corpus with prejudice.

## PRELIMINARY MOTIONS

After the Court re-opened this case (Dkt. 165), Petitioner filed a second Motion to Lift Stay. (Dkt. 166.) That motion will be deemed moot.

Petitioner has filed a "Motion to Eliminate from Habeas Corpus Documents, Clerk of Court Mixed into Habeas Corpus." (Dkt. 169.) Petitioner claims that the Clerk of Court has mixed up documents among his many cases that he is pursuing in this Court. The documents found at Docket Nos. 139 (a motion for injunction against further retaliation) and 164 (a notice of motion that the United States Constitution and the Second Amendment be adhered to by the state of Idaho) were intended for Case No. 1:16-cv-00287-REB, not this habeas corpus case. He contends the misfiling of Docket No. 139 caused the improper dismissal of that case.

In general, Petitioner asks that any document that does not bear his handwritten notation "Case No. HC-CV-1:13-00526-CWD" be removed from the docket in this case. Petitioner files hundreds of documents each year in a multitude of cases. At times, it is unclear where the filings are intended to go, especially when the filings are not marked with a case number. The Clerk of Court does its best to docket the filings as Petitioner intended; neither the Court nor the Clerk have the time to scrutinize each document filed in this case to remove those not bearing Petitioner's handwritten case numbers. However, Docket Nos. 139 and 164 will be stricken and will not be considered in this case.  Given the docket shows that Case No. 1:16-cv-00287-REB has been recently re-opened to

permit Petitioner to file an amended complaint (Dkt. 50 in Case No. 1:16-cv-00287-REB), Petitioner can decide whether to re-file these documents in that case.

Petitioner has filed a "Motion for U.S. Attorney General's Address and to Pull Notice of Appeal to Ninth Circuit." (Dkt. 172.) The motion has two attachments. The first is a letter to former United States Attorney General Loretta Lynch, stating:

> You being a attorney and a public official should know well the U.S. Const., and know that no way do you have a defense or a response to 1:16-cv-00395-REB, Johnny R. Andoe v. Obama, Clinton, Biden, Kerry, 2/3rds of U.S. Senators, Hillary Clinton the baby killer! Man hating, lying witch.... Their is no possible way of winning except to meet with me and come to a agreement in order to get me to withdraw suit, or see me completely exonerated and arrest, conviction, record completely cleared and sealed.

(Dkt. 172-1 (verbatim).) The second is a letter to Hillary Rodham Clinton complaining about her political agenda. (Dkt. 172-2.)

Petitioner requests that the Clerk of Court provide him with the address of the United States Attorney General or forward his letter to the Attorney General. This letter has no relevance to this habeas corpus action, and bears no case number; therefore, it may have been filed in the wrong case. Regardless, the Court will provide to Petitioner the address of the current Attorney General, Jeff Sessions. To that extent, the Motion is granted. The Attorney General's address is: *Office of the Attorney General, 1350 Pennsylvania Avenue NW #409, Washington, DC 20004*. Petitioner included no requests related to his letter for Mrs. Clinton or to his title to "pull [a] notice of appeal."

Respondent has filed a Motion for Extension of Time, requesting additional time to file a pre-answer motion. (Dkt. 173). Good cause appearing, the Motion will be

granted. Petitioner's Motion to Dismiss the Motion for Extension of Time (Dkt. 175) will be denied. No prejudice resulted to Petitioner from the later response by the Attorney General, especially given the unusually large number of filings Petitioner has made in this case.

Petitioner's Motions to Dismiss Respondent's Motion for Summary Dismissal (Dkt. 179, 188) will be considered as supplemental responses to the Motion for Summary Dismissal. To the extent they appear on the docket as "motions," the motions will be denied, because they are responsive in nature.

Petitioner's Motion to Supplement by Adding Newly Appointed Director of Prisons to Pending Cases before this Court (Dkt. 174) seeks to add the new IDOC Director, Henry Atencio, as a respondent in this case. The motion will be granted. In addition, Respondent has filed a Notice of Substitution of Respondent, adding Randy Blades, Petitioner's current custodian, in place of Keith Yordy, Petitioner's former custodian.

Petitioner has submitted also a Motion for an Order for No More Submission of Documents. (Dkt. 188.) The Court will deny the Motion as moot, because granting the Motion would result in the striking of many of Petitioner's own filings, and this case is at its end.

Petitioner requests that the Court lift the case management rule in this case that he be permitted to have only three pending motions before the Court at any time. (Dkt. 199.) This Motion is also moot because this case is at its end.

Petitioner's Motion to Court to Accept Defendant's Motions of Default as Defendant's Response (Dkt. 200) and Motion to Compel (Dkt. 204) lack an adequate factual or legal basis and, as such, will be denied.

## REVIEW OF MOTIONS FOR SUMMARY DISMISSAL

### 1.    Factual Background

Petitioner served in the military and suffered trauma, which may have resulted in post-traumatic stress disorder. Many years later, he married his wife, Joyce. Petitioner presented evidence at sentencing that he and Joyce had been married for seven years. In 2007, Petitioner suffered a shoulder injury, which jeopardized his livelihood. The marriage was more difficult for them to maintain after that point, but they remained in the relationship. (State's Lodging A-2.)

Throughout their marriage, the couple engaged in unusual sexual activities. (State's Lodging A-3, p. 60-71.) Prior to the evening in question, Petitioner had made and used his own examination table, examined Joyce's breasts and vaginal area, inserted a catheter and tampons into Joyce's vagina, pierced her vagina, and used handcuffs to restrain her. (State's Lodging A-2, A-3.) Petitioner states these activities were efforts to keep their marriage "new and alive," and the government had no business intruding into the privacy of their home. (Dkt. 182-2, p. 7.) The record is unclear about which type of acts Joyce fully consented to and which she believed Petitioner was forcing her to do during the couple's history together.

On December 7, 2009, the Jerome police dispatcher received a 911 emergency call from a female caller, who said something like, "My baby, my baby" and "Jerome," and then hung up. The dispatcher eventually traced the call to the house of Petitioner and Joyce, and police officers responded. Upon arrival, police knocked on the door and asked if someone had called 911. Petitioner answered the door, and Joyce came running out of the house saying that she had made the call and that she needed help. Petitioner then went upstairs, retrieved a gun, held it to his head, and engaged in a standoff with the responding police officers. After about a half hour, Petitioner agreed to put down the gun and give himself up. (State's Lodging A-3.)

Joyce was taken to the emergency room. She told emergency room personnel and police officers that Petitioner had examined Joyce, inserted a catheter and several tampons into her vagina, and pierced her labia and inserted earrings into the piercings, causing bleeding and discomfort. At some point, Petitioner had handcuffed Joyce. At some point, Joyce had expressed her dissatisfaction with what was happening. At her first opportunity after becoming dissatisfied and not being able to disengage from these acts, Joyce dialed 911 to seek help. (State's Lodging A-3.)

Petitioner was arrested and charged with one count of felony first degree kidnaping, two counts of felony domestic battery, and one count of penetration with a foreign object. (State's Lodging A-1.) On June 7, 2010, the state district court presiding over Petitioner's criminal case ordered Petitioner committed to the custody of the Idaho Department of Health and Welfare for care and treatment at an appropriate facility, based

on a psychological assessment that he was not competent to assist counsel in his own defense as to the pending charges. (State's Supplemental Lodging, Dkt. 69, pp. 231-32.) On August 9, 2010, the state district court terminated Petitioner's commitment. (*Id.*, p. 242.)

On October 26, 2010, upon the advice of counsel, Petitioner entered an *Alford* plea of guilty to the lesser-included offense of second degree kidnaping and one count of felony domestic battery.[1] (State's Lodging C-2, pp. 121-122.) The *Alford* plea was for the purpose of contesting whether Petitioner's handcuffing of Joyce to the bed was consensual. (State's Lodging A-3, pp. 25-26.)

At the change-of-plea hearing, the state district court made an extensive record of the facts supporting the plea as knowing, voluntary, and intelligent. Petitioner raised no issues of adequate access to his attorney to discuss the law and the facts supporting the charges, of ineffective assistance of counsel, or of inadequate opportunity to review the State's evidence against him. (*See* State's Lodging A-2.) Petitioner acknowledged that he had a right to withdraw his guilty plea if the sentencing court did not follow the plea agreement, and that he understood that he could not withdraw his plea under any other circumstances. (*Id.*, p. 23.)

---

[1] An *Alford* plea takes its name from *North Carolina v. Alford*, 400 U.S. 25, 35 (1970), where the United States Supreme Court held that it was constitutionally permissible for the court to accept and sentence an individual upon "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty."

In his allocution, Petitioner stated: "[D]ue to the current situation and what I have learned over the last 14 months, I have actually found that the court no longer cares about the truth as far as regards to the constitution." (*Id*., p. 52.) Petitioner also said, "I want the court to know that I was not alone in any of this. I made bad decisions. I made bad actions, but there was a second party involved." (*Id*., p. 53.)

The sentencing court recognized that Petitioner may have thought that some of the sexual acts were consensual, but when Joyce expressed her dissatisfaction, Petitioner should not have continued with the acts that inflicted pain upon her. (*Id*., p. 55-56.) The court observed, "[W]hile it may very well be true that on the prior occasions when you engaged in this conduct with your wife, …this court can clearly understand how your wife perhaps came to her own breaking point." (*Id*., p. 55.)

The record reflects that some of the acts were nonconsensual. Joyce called 911 after Petitioner pierced her labia. She was "screaming over the telephone for help," and ran away from Petitioner, again screaming for help, when police arrived. (*Id*., p. 44; State's Lodging A-2.) Joyce left the house in a bathrobe, without her much-needed eye glasses, her phone, or shoes. (State's Lodging A-3, pp. 20, 46, 48.) These extreme actions taken to disengage herself from the evening's sexual activities tend to show her lack of consent at some point. In addition, Dr. James Tyson, who completed a mens rea evaluation of Petitioner, reported that "*both* parties indicated that [Joyce] communicated her displeasure with the [labia] piercing." (*Id*., p. 16 (emphasis added). Joyce also

reported that she felt she needed to leave before Petitioner followed through with his

verbalized plan to pierce her nipples and have her perform oral sex on him. (*Id*., p. 16.)

Petitioner alleges that the reason Joyce called 911 was because she and police

officers were engaged in a conspiracy to set him up, so that she could gain some

advantage in divorce proceedings. However, after reviewing Petitioner's financial assets,

the sentencing judge observed, "I frankly don't know what advantage, if any, she could

have gained, but based on the financial information I have, there is nothing that she

would gain [] financially or otherwise." (State's Lodging A-3, p. 56.) The record reflects

that the parties did divorce, but Joyce gained no benefit. In her victim impact letter, Joyce

stated Petitioner's actions and arrest caused her to lose the home she and her husband

owned, along with her husband's income, upon which she was dependent. (*Id*., p. 37.)

Upon conviction, Petitioner was sentenced to a term of ten years fixed, with ten

years indeterminate on the kidnaping charge, and ten years fixed on the domestic

violence charge, to run concurrently with the kidnaping sentence. The court retained

jurisdiction for 365 days, and placed Petitioner in the therapeutic community rider

program. When it was time for the district court to consider Petitioner's progress in the

program, that court concluded: "it is apparent that the defendant is unable to comply with

the requirements of his programming to address his criminal thinking and behavior as

well as his risk to the community based on the psychosexual evaluation prepared for

disposition as well as his inability to meaningfully participate in the sex offender

assessment group." (State's Lodging B-4, p. 3.) The state district court then relinquished jurisdiction, and Petitioner was imprisoned.

After pursuing many state court actions that are more fully described below, Petitioner filed this federal habeas corpus action.

## 2. Petitioner's Claims and Summary Dismissal Briefing

Petitioner's claims are somewhat difficult to decipher, because he has presented some of them in a narrative form. The claims appear to be as follows: "(1) breach of a binding plea agreement; (2) illegally imposing a sentence; (3) failure to allow disclosure to PSI addendum, to correct, refute, or rebut addendum; [and] (4) ineffective assistance of counsel." (Dkt. 131, p. 1-2.) Claim (4), the ineffective assistance claim, has the following subparts: (a) counsel misled Petitioner in negotiation of the Rule 11 plea agreement, (b) counsel failed to follow Petitioner's instructions at the preliminary hearing regarding the questioning of witnesses, and (c) counsel failed to present certain allegedly mitigating evidence to the court prior to entry of the guilty plea. (Dkt. 131.)

Respondent seeks summary dismissal of the Petition for Writ of Habeas Corpus on procedural grounds. (Dkt. 177.) In response, Petitioner has filed two "Motion to Dismiss Respondent's Motion for Summary Judgment/Dismissal" (Dkts. 179, 188), two "Responses" (Dkt. 180 and 189), an Affidavit (Dkt. 181), a Memorandum to Court (Dkt. 182), a Notice of Supplement of Supporting Law (Dkt. 184), a Supplement to the Memorandum (Dkt. 190), and two other documents containing supplemental arguments. (Dkts. 199, 200.) Respondent has filed a Reply (Dkt. 185), and a Response to Petitioner's

Motion to Dismiss Respondent's Motion to Dismiss (Dkt. 186). Therefore, the Motion for Summary Dismissal is now fully briefed.

### 3.     Standard of Law

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court takes judicial notice of the records from Petitioner's state court proceedings lodged by the parties.

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. Because the Idaho Supreme Court has the discretion to review decisions of the Idaho Court of Appeals, a petitioner whose appeal was heard by the Idaho Court of Appeals also must have presented all of his federal claims in a petition seeking review before the Idaho Supreme Court. *Id.* at 847. "Fair presentation" requires description of both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

If a claim was not properly presented to the Idaho Supreme Court, it is considered "procedurally defaulted" on federal habeas corpus review. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

4.    **Discussion**

    *A.*    ***Respondent's Argument***

To show that his claims have been exhausted properly, Petitioner must demonstrate that he presented each claim to the Idaho Court of Appeals in a manner that comports with state law procedural requirements, and then presented each claim to the Idaho Supreme Court in a proper petition for review. Respondent makes a very simple procedural default argument that is supported by references to the state court record: Petitioner presented no cognizable federal habeas corpus claim to the Idaho Supreme Court. The record supports Respondent's contention.

First, on direct appeal, Petitioner brought only a claim that the trial court erred by denying his request for appointment of counsel to assist him with his Rule 35 illegal sentence motion. (State's Lodging B-1.) This is not a cognizable habeas corpus claim, because it is not a challenge to his convictions or sentences. Therefore, while Petitioner

properly raised this claim to the Idaho Supreme Court, it is of no help to his exhaustion argument on federal habeas corpus review.

Second, Petitioner filed a post-conviction petition in Case No. CV2012-407, but he did not file an appeal after dismissal of that action by the state district court. (*See* State's Lodgings C-1, C-2). He also filed a successive post-conviction petition, Case No. CV2013-383, but he was denied leave to proceed, except as to the filing of a Rule 35 motion to correct an illegal sentence. (State's Lodging D-2.) No notice of appeal is shown on the Register of Actions. (State's Lodging D-1.)

Third, Petitioner brought a state habeas corpus case, Case No. CV2012-1119. After his habeas corpus petition was denied, he filed an appeal. (State's Lodging E-2, p. 54.) The appeal was dismissed for failure to pay the record preparation fees and failure to respond to the appellate court's notice of conditional dismissal. (State's Lodging F-1, to F-3.)

Fourth, Petitioner filed two additional habeas corpus petitions, Case Nos. CV-HC-1209697 (State's Lodging G-2) and CV-HC-1316868 (State's Lodging H-2), but did not file a notice of appeal in either case. (*See* State's Lodgings G-1, H-1.)

Fifth, Petitioner filed two Rule 35 post-judgment motions in Case No. CV2009-7429. (State's Lodgings I-1, K-1.) He filed appeals that were heard by the Idaho Court of Appeals, but he did not file petitions for review with the Idaho Supreme Court (State's Lodgings J-3 to J-6, K-1, L-1 to L-8).

### B.    Petitioner's Motion to Dismiss Respondent's Motion to Dismiss

Petitioner argues that Respondent's Motion for Summary Dismissal should be "dismissed" or denied because the United States Court of Appeals for the Ninth Circuit has determined that "a violation of Rule of Procedure, Crim. Rule 32, claim of due process will not be rendered to states for violation of that Rule, showing state procedurally defaulted violating the significant guaranteed right of due process." (Dkt. 179, pp. 1-2.) Petitioner may be unaware that the Federal Rules of Criminal Procedure are not applicable in federal habeas corpus cases. The Court sees no other applicability of the principle Petitioner cites.

Petitioner asserts that his claims should not be considered procedurally defaulted, but should be heard on the merits because the victim, Joyce, told at least four different versions of her story, and no physical evidence exists to support her claims of sexual abuse and kidnaping. He asserts that different versions of the "facts" exist in various law enforcement agency reports. (Dkt. 179, p. 2.) This assertion addresses the merits of his claims,[2] or presents an actual innocence argument (addressed below), but does not demonstrate that his claims are not procedurally defaulted.

Petitioner also argues that Respondent cannot rely on procedural default, because the Idaho Supreme Court itself did not rely on a procedural bar to reject Petitioner's

---

[2]    Petitioner entered an *Alford* plea, reserving the right to appeal only if the sentencing court did not follow the sentencing recommendations of the parties. He gave up his right to confront his accusers at trial. (State's Lodging A-2.) Therefore, he cannot now challenge the victim's version of events unless he first shows that his guilty plea was in violation of the law, because a valid guilty plea forecloses any such claims that were relinquished upon pleading guilty. *See Boykin v. Alabama,* 395 U.S. 238, 243 (1993); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (a person who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas relief based on pre-plea constitutional violations).

claims. Petitioner, however, fails to realize that there are several different ways procedural bar can occur, as explained above. One type of default occurs when the Idaho Supreme Court does not decide the merits of a claim because the claim was presented in a procedurally improper manner. Another type, which is the applicable default principle in this case, occurs when a petitioner has failed to raise his claims in the Idaho Supreme Court. *See Baldwin v. Reese*, 541 U.S. at 32; *Coleman v. Thompson*, 501 U.S. at 750.

Petitioner also asserts that he was denied access to the Idaho Supreme Court because his in forma pauperis application was denied, and he had no means to pay the record preparation fees, a prerequisite to fully exhausting his claims. The record does not support this contention.

Petitioner attempted to appeal the dismissal of the first habeas petition, which was dismissal for lack of venue.[3] (State's Lodging E-2, pp. 32-33.) Petitioner filed a notice of appeal, a request to proceed in forma pauperis, and a request for appointment of counsel on appeal. (*Id*., pp. 54, *et seq.*) The Register of Actions (State's Lodging E-1) shows that the state district court did not rule on the in forma pauperis request (State's Lodging E-2, pp. 59-63), although it denied the motion for appointment of counsel. (*Id*., p. 76; *see* State's Lodging E-1.)

When the Idaho Supreme Court reviewed the case, it found that the appellate record preparation fees had not been paid. The Idaho Supreme Court issued an order of conditional dismissal on that ground. (State's Lodging F-1.) The order gave Petitioner 21

---

[3]     He filed it in Jerome County, but was being held in Ada County.

days to respond, but Petitioner did not respond. After 21 days, the Idaho Supreme Court dismissed the appeal for nonpayment. (State's Lodging F-2.)

Petitioner argues, but has not shown, that the state courts denied his request for in forma pauperis status and closed the courthouse doors to him because of his poverty. Rather, in forma pauperis status was neither granted nor denied. Petitioner had a duty to, but did not, follow up with either the state district court or the Idaho Supreme Court to obtain in forma pauperis status on appeal. Petitioner could have informed the Idaho Supreme Court that his in forma pauperis application had never been ruled upon by the district court, or he could have filed a new request. Therefore, Petitioner's argument that the state courts discriminated against him because of his poverty is without a factual basis and is not ground to excuse the default of his claims.

For the foregoing reasons, the Court concludes that all of Petitioner's claims are procedurally defaulted.

i.     **Cause and Prejudice and Miscarriage of Justice**

Two exceptions are available to petitioners who have procedurally defaulted their claims. A procedurally defaulted claim can be heard in federal court if the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

### A. *Traditional* Coleman *Cause*

#### 1) Standard of Law

Ordinarily, to show "cause" for a procedural default, petitioner must prove that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). To show "prejudice," a petitioner must show "not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

#### 2) Discussion

Like his argument that his claims should not be considered procedurally defaulted because his in forma pauperis application for his appeal was denied, Petitioner alternatively argues that his inability to proceed without a fee waiver constitutes adequate cause to excuse the default of his claims. This argument meets the same fate. The state court record contains no evidence that the state district court ever ruled on Petitioner's motion for in forma pauperis status, or that it purposely ignored the request to thwart Petitioner's ability to access the courts. (*See* State's Lodging E-1.)

It is clear that Petitioner failed to respond to the notice issued by the Idaho Supreme Court and to assert his status as a pauper before that court. Nothing in the record shows that Petitioner was unable to respond to the notice, nor does anything show that the Idaho Supreme Court would not have taken action to determine Petitioner's in forma

pauperis status or refer that determination to the state district court, if it had been alerted to the facts. This is not an adequate reason upon which to find that an external "cause" exists to excuse the procedural default of any of Petitioner's claims.

### B. Martinez *Cause*

#### 1) <u>Standard of Law</u>

A limited exception to the *Coleman* rule exists in *Martinez v. Ryan*, 566 U.S. 1 (2012). That case held that inadequate assistance of post-conviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. To show ineffective assistance of PCR counsel, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Id.* at 14. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 695-96 (1984).

The *Martinez v. Ryan* exception applies only to defaulted claims of ineffective assistance of trial counsel; it has not been extended to other types of claims. *See Davila v. Davis*, 137 S. Ct. 2058 (2017) (holding that *Martinez* is not applicable to claims of ineffective assistance of direct appeal counsel); *Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (holding that *Martinez* is not applicable to a defaulted *Brady* claim).

2)    <u>Discussion</u>

Petitioner has raised several ineffective assistance of counsel claims. (Dkt. 131.)
However, Respondent argues that *Martinez* does not apply here, because there is no
causal connection between Petitioner's procedural default and his lack of post-conviction
counsel. Petitioner's claims were, in fact, brought before the state district court, but
Petitioner failed to file any appeal. Therefore, the claims were not defaulted in the initial
post-conviction proceeding, but were defaulted on appeal, a stage of proceedings not
covered by the *Martinez* exception.

The Court agrees with Respondent. Petitioner did not appeal his first post-
conviction matter, a decision that deprived the Idaho Supreme Court from hearing his
ineffective assistance of counsel claims. (*See* State's Lodging C-2, p. 10.) Had he done
so, the Idaho Supreme Court may have chosen to hear his claims on the merits.
Therefore, it is Petitioner's failure to appeal, not his pauper status, wherein his default
lies.

In his second post-conviction matter, Petitioner filed an appeal, but did not
respond to the Idaho Supreme Court's order of conditional dismissal. Again, this was not
an issue related to the initial post-conviction proceeding, but a default that occurred
during appellate proceedings. Therefore, the *Martinez* exception does not excuse the
default of the ineffective assistance of counsel claims.

### C. *Miscarriage of Justice*

#### 1) <u>Standard of Law</u>

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the Court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

Where the petitioner pleaded guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 351 (8th Cir. 1996).

The United States Court of Appeals for the Ninth Circuit has observed that, due to "the rarity of [new reliable evidence showing actual innocence], in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).

Petitioner vaguely asserts that he received new evidence in 2013 that proves his actual innocence. The new evidence consists of St. Benedict's Hospital reports, inconsistent written statements by the victim, and two police narratives that allegedly were withheld from him. (Dkt. 180.) He does not specifically identify the documents.

The Court first notes that Petitioner has not shown that any documents were withheld from him and his trial attorney during the discovery period. In fact, most of the evidence was contained in the State's list of exhibits or attached to the Presentence Investigation Report. (Exhibit 69, pp. 154-156; State's Lodging A-3.) Both of these items were provided to Petitioner and his counsel before Petitioner pleaded guilty

Further discrediting Petitioner's assertion that he received new evidence in 2013 is the fact that he was represented by counsel in 2013, and it is unlikely that counsel would have ignored new evidence that would have established Petitioner's actual innocence. Or, if Petitioner became aware of the new evidence through other means, it is unlikely that Petitioner would not have brought it to the attention of his counsel. Nowhere does the record show that, in 2013, Petitioner or his new counsel asserted in state court proceedings that they had discovered that the State had withheld documents from Petitioner prior to his guilty plea. (State's Lodgings I-1, I-2.)

Another item that discredits Petitioner's assertion that he did not receive important evidence until 2013 is his original federal Petition for Writ of Habeas Corpus filed in on December 16, 2013. Therein, Petitioner alleges that he discovered new evidence after

sentencing that the "alleged victims motive is she inflicted me with herpies [sic] without giving me knowledge that she thru adultery contracted the uncurable disease." (Dkt. 3, p. 11 (verbatim); *see* Dkt. 3-1, p. 4.) Similarly, on November 13, 2013, Petitioner filed a motion to enter new evidence in his state court case, which consisted of information that he discovered he had a sexually transmitted disease, including a strange and painful rash and a strange white sore on his lip. (Dkt. 3-11, p. 1.)

Beyond the new discovery of his herpes condition, Petitioner did not mention in his original Petition that he recently discovered documents that were previously withheld from him and his attorney under *Brady v. Maryland*, 373 U.S. 83 (1963), or that such documents proved his actual innocence. (Dkt. 3 to 3-13.) The Court can find nothing in the record corroborating Petitioner's position that evidence was withheld from him, other than his allegations about Joyce infecting him with herpes. Therefore, Petitioner has not shown that his evidence is "new" under the *Schlup* standard (meaning that he did not have notice of its existence before he pleaded guilty). Therefore, his claim of actual innocence fails.

Further, Petitioner has not shown that his "new" evidence is of the character required by *Schlup*, e.g., "credible declarations of guilt by another, trustworthy eyewitness accounts, or exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d at 351. Rather, Petitioner simply summarizes the alleged inconsistencies between the police reports and victim statements.

Petitioner argues that Joyce made different statements to two different police officers, and that the reports contain different observed injuries. (Dkt. 180, p. 5.) The officers included their own observations of the injuries, and so it is difficult to see how third-party observations reflect on Joyce's credibility. Petitioner has provided no evidence that there was a conspiracy between officers and Joyce, such that officers would have fabricated their observations, as he has alleged. This allegation does not show that Petitioner is actually innocent.

Petitioner also points to inconsistencies in Joyce's version of events, as recorded in the police reports, to attempt to show that she is being untruthful. (Dkt. 179, p. 3; Dkt. 180, p. 5.) For example, in one report, she mentions that Petitioner "told her to get her butt upstairs" (State's Lodging A-3, p. 20); in her preliminary hearing testimony, she said he "ordered [her] upstairs." (Exhibit 69, p. 33); and in another police report, she reported Petitioner "grabbed [her] and drug her upstairs." (Dkt. 3-5, p. 5.) Giving Petitioner the benefit of the doubt that the inconsistencies suggest Joyce fabricated one of the versions of events, the Court still concludes that this evidence is not of the type upon which a *Schlup* claim can be based, because how the couple got upstairs does not bear on the fact that Joyce had handcuffing injuries, labia piercings, and four tampons stuffed into her vagina when she arrived at the hospital emergency room. (Dkt. 69.) Hospital staff took photographs to document the condition in which she arrived at the emergency room. Petitioner simply should not have pleaded guilty if he desired to base his defense on inconsistencies in Joyce's versions of the events.

Petitioner also points to inconsistencies regarding the injuries suffered by Joyce. The injuries upon which the state district court relied to support the conviction of domestic battery were the marks from the handcuffs around Joyce's wrists. Handcuff marks on Joyce's wrists were observed and noted in the police report by Officer Rushing. (State's Lodging A-3, pp. 19-20.) The hospital noted more marks on the right wrist, and fewer on the left wrist, supporting the victim's story that Petitioner handcuffed her by one hand to the bed, but he could not get the other handcuff on her. Petitioner alleges that, in some versions, Joyce mixes up which hand was handcuffed. Petitioner knew of the injury allegations at the change-of-plea hearing, and he and his attorney specifically acknowledged that in the plea colloquy. (State's Lodging A-2, pp. 32-34.) Petitioner and his counsel had notice of the hospital emergency room report, because it was mentioned at the change-of-plea hearing. (State's Lodging A-2, 33-34.) Petitioner could have asserted a defense that he thought the injuries were fabricated, rather than plead guilty, but he did not. Therefore, this is not "new evidence" and it is not an adequate basis for a claim of actual innocence, because it is clear that her injuries on both wrists were due to handcuffing or attempted handcuffing.

Petitioner alleges that he could not have committed the crimes because he had sustained a shoulder fracture on April 21, 2007 (State's Lodging A-3), about two and one half years before the incident on December 7, 2009. He alleged at sentencing that he could not manipulate any large object, including anything over 5 pounds. (State's Lodging A-2, p. 48.) There is nothing in the record corroborating the amount of weight

he could lift or the status of his shoulder condition two and one half years after his injury. Petitioner's bare allegations that his shoulder injury proves he could not commit the crimes, without more, is not enough to show actual innocence. In addition, this is not new evidence, as it was completely within his own knowledge before he pleaded guilty.

Finally, Petitioner alleges that the Court should permit him to conduct discovery on the actual innocence issue. He desires to ask the victim and other witnesses questions about whether Joyce and law enforcement officers had a conspiratorial plan to accuse Petitioner of the crimes without any supporting evidence and to effectuate a "preplanned arrest." (Dkt. 207, p. 4.) Petitioner has pointed to no evidence of a conspiracy in the record. Without more, he is not entitled to discovery on the conspiracy theory or for any other reason he has suggested in his many filings.

5.    **Summary**

The Court concludes that all of Petitioner's claims are procedurally defaulted. Petitioner has not shown grounds exist to apply either traditional cause and prejudice or *Martinez v. Ryan* cause and prejudice to his claims.

Further, Petitioner has not shown that he is actually innocent of the crimes of which he stands convicted. Petitioner has not shown that the information he contends is "new" was not available to him and his trial counsel before he pleaded guilty. Some of Petitioner's actual innocence claims are based upon facts easily accessible to him, like the status of his shoulder condition, but he has not brought forward any corroborating evidence in the many years since his conviction. The Court will not permit Petitioner to

conduct discovery on his actual innocence claim because he has no evidence whatsoever to suggest that Joyce and police officers were engaged in a conspiracy to have him arrested on false charges. Nor has he shown that anything fruitful would come of discovery as it relates to procedural default, cause and prejudice, or actual innocence.

To the extent that Petitioner asserts other arguments that the Court did not specifically address, the Court has considered those arguments and rejects them without discussion.

Accordingly, the Petition for Writ of Habeas Corpus will be dismissed with prejudice, meaning the claims contained in the Petition cannot be brought again. Petitioner may file a notice of appeal in this case, but he must not file anything further in this case after it is closed.

## ORDER

**IT IS ORDERED:**

1. Petitioner's second Motion to Lift Stay (Dkt. 166) is DENIED as MOOT.

2. Petitioner's "Motion to Eliminate from Habeas Corpus Documents, Clerk of Court Mixed into Habeas Corpus" (Dkt. 169) is GRANTED in part and DENIED in part. Docket 139 and Docket 164 are STRICKEN. The Clerk of Court shall send Petitioner a copy of Docket Nos. 139 and 164 so that he can determine whether he would like to file them in his other pending case.

3. Petitioner's "Motion for U.S. Attorney General's Address and to Pull Notice of Appeal to Ninth Circuit" (Dkt. 172) is DENIED in part and GRANTED to the extent that the Court has provided Petitioner with the address of the United States Attorney General.

4. Respondent's Motion for Extension of Time, requesting additional time in which to file a pre-answer motion (Dkt. 173) is GRANTED.

5. Petitioner's Motion to Dismiss the Motion for Extension of Time (Dkt. 175) is DENIED.

6. Petitioner's Motions to Dismiss Respondent's Motion for Summary Dismissal (Dkt. 179, 188) are DENIED, but the Court has considered the content of the Motions as responsive to Respondent's Motion for Summary Dismissal.

7. Petitioner's Motion to Supplement by Adding Newly Appointed Director of Prisons to Pending Cases before this Court (Dkt. 174) is GRANTED. Randy Blades and Henry Atencio have been added as Respondents in this case.

8. Petitioner's Motion for an Order for No More Submission of Documents (Dkt. 188) is DENIED as MOOT.

9. Petitioner's Request for Leave for Court to file a Motion that will Remove Decision (Dkt. 199) is DENIED.

10. Petitioner's Motion to Court to Accept Defendant's Motions of Default as Defendant's Response (Dkt. 200), Motion to Compel (Dkt. 204), and Motion for Federal Marshals to Question Witnesses (Dkt. 207) are DENIED.

11. Respondent's Motion for Summary Dismissal (Dkt. 177) is GRANTED.

12. The Amended Petition (Dkt. 131) and this entire action are DISMISSED with prejudice.

13. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: September 29, 2017

Honorable Candy W. Dale
United States Magistrate Judge